UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIDGETT MICHELLE BOWDEN,
        Plaintiff,

v.                                                   Case No.: 3:25cv715/MW/ZCB

FRANK BISIGNANO,
Commissioner of Social Security,
        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a Social Security appeal filed under 42 U.S.C. § 405(g).
Plaintiff Bridgett Michelle Bowden seeks judicial review of the Social
Security Commissioner's decision denying disability benefits.  For the
reasons below, this matter should be remanded to the Commissioner.

### I.   Procedural History

Plaintiff applied for a period of disability and disability insurance
benefits with an alleged onset date of June 30, 2019.  (Tr. 19, 161-64).[1]
The Social Security Administration denied her application.  (Tr. 52-57,

---

[1] Citations to the administrative record filed by the Commissioner are
designated as "Tr."  The page numbers cited are those found on the
bottom right corner of each page of the transcript, rather than the
numbers that were assigned by the Court's electronic docketing system.

59-64).    Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on January 8, 2024.  (Tr. 32-50).  The ALJ issued a decision on February 23, 2024, finding Plaintiff was not disabled. (Tr. 19-27).  The Appeals Council denied Plaintiff's request for review. (Tr. 1-3).  Thus, the ALJ's decision stands as the Commissioner's final decision.  Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II.    The Social Security Administration's Sequential Evaluation Process

The Social Security Administration uses a five-step sequential process to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.* § 404.1520(b).  Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments.  *Id.* § 404.1520(a)(4)(ii).  To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  *Id.* §

404.1520(c).

Third, the Commissioner evaluates whether the claimant's severe impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listings"). *Id.* § 404.1520(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity permits performance of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work in the national economy. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that she

cannot perform the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.

### III.   The ALJ's Decision

Here, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 30, 2019, through her date last insured of December 31, 2019.  (Tr. 21, Finding 2). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "lumbar disc disease and scoliosis."  (Tr. 21, Finding 3).  The ALJ further found that Plaintiff's medically determinable impairments of anxiety, temporomandibular joint syndrome, and restless leg syndrome were non-severe.  (Tr. 22-23).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the date last insured.  (Tr. 23, Finding 4).  Proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of light work.  (Tr. 23, Finding 5).  At step five, the ALJ concluded there were jobs in significant numbers in the national economy that Plaintiff could perform.

(Tr. 27, Finding 10). Based on these findings, the ALJ concluded that Plaintiff was not disabled from June 30, 2019, through December 31, 2019. (Tr. 27, Finding 11).

### IV. Standard of Review

When reviewing a Social Security decision, the question is not whether the Court would have reached the same conclusion had it been in the ALJ's shoes. Instead, the Court must "give substantial deference" to the ALJ's decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). Thus, this Court's task is limited to determining whether the ALJ's decision was "supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It requires "more than a mere scintilla, but less than a preponderance." *Dyer*, 395 F.3d at 1210 (cleaned up). This means that the Court should uphold the ALJ's decision if it is "supported by substantial evidence . . ., even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up). When conducting the substantial evidence review, the

Court does not "decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up).

## V.    Discussion

In her brief, Plaintiff first argues that remand is necessary because the ALJ failed to properly consider the medical opinions of Plaintiff's treating physician, Dr. John Lee.[2]  (Doc. 12 at 9-14).  The Court agrees with Plaintiff.

The ALJ is required to assess the persuasiveness of all medical opinions in the record.  20 C.F.R. § 404.1520c(b).  When determining the persuasiveness of a medical opinion, the ALJ must consider (1) the opinion's supportability or the relevance of the objective evidence to the opinion; (2) the opinion's consistency with the objective evidence; (3) the

---

[2] Although Plaintiff makes other assignments of error, it is unnecessary to reach them because the Court finds that remand is warranted on this assignment of error. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (finding it unnecessary to address remaining issues because remanding on one issue); *see also Tammy C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00074, 2021 WL 9666636, at *13 n.26 (N.D. Ga. Sept. 30, 2021) (stating that "since remand is required for further proceedings that could impact the ALJ's assessment of the other issues raised . . . the Court need not address the remaining issues").

medical professional's relationship with Plaintiff; (4) the professional's specialization; and (5) other factors, such as the medical professional's familiarity with other record evidence. 20 C.F.R. § 404.1520c(c). The first two factors are the most important. *Id.* § 404.1520c(b)(2). And the ALJ must articulate how she considered the supportability and consistency of the medical opinion. *Id.*

Here, Dr. Lee—Plaintiff's long-time treating physician—completed a Residual Functional Capacity Questionnaire in June 2022. (Doc. 362-64). Dr. Lee listed Plaintiff's diagnoses as severe scoliosis, severe DDD, chronic pain, and severe neuropathy. (Tr. 362). Dr. Lee identified Plaintiff's symptoms as "chronic back pain/neuropathy/unstable gait." (*Id.*). He opined that Plaintiff's impairments would result in constant interference with the attention and concentration required to perform simple work-related tasks and that Plaintiff's medications would cause sedation and cognitive dysfunction that would impact Plaintiff's capacity to work. (*Id.*). He further opined that Plaintiff was limited to no more than 5 minutes of sitting, standing, or walking at one time; could walk no city blocks without rest or significant pain; could sit, stand, or walk for a total of only 1 hour a day in an 8-hour workday; and would require

7

a job that permits her to shift positions at will from sitting, standing, and walking. (*Id.*). He also noted that Plaintiff would need unscheduled breaks lasting 15-30 minutes every half hour. (*Id.*). He limited Plaintiff to "never" lifting any weight, even weight less than 10 pounds, and stated that Plaintiff could spend no more than 5% of the day reaching or performing handling or fine manipulation with her upper extremities. (Tr. 363). He estimated that Plaintiff would be absent from work more than four times a month and would not be physically capable of working an 8-hour day, 5 days a week on a sustained basis. (*Id.*).

In July 2023, Dr. Lee completed a questionnaire submitted to him by Plaintiff's attorney. (Tr. 379-80). The questionnaire asked Dr. Lee about Plaintiff's condition as of June 2019, which was when Dr. Lee had ordered an MRI of her back. Dr. Lee opined that, as of June 2019, Plaintiff was incapacitated and unable to walk without assistance. (Tr. 379). Dr. Lee further stated that Plaintiff was unable to perform her full-time work as a painter and was incapable of working 8-hours a day, 5 days a week at any job as of June 2019. (*Id.*). When asked how often Plaintiff would be absent from work in June 2019, Dr. Lee wrote "N/A Can't Work. Totally Disabled." (Tr. 380). Dr. Lee further stated that the

Residual Functional Capacity Questionnaire he completed in June 2022 would apply to Plaintiff's condition in June 2019. (*Id.*). At the end of the questionnaire, Dr. Lee wrote, "This patient has major musculoskeletal disorder with inability to walk, bend, climb, stoop, etc. Will never be able to work again in any capacity." (*Id.*).

The ALJ found Dr. Lee's opinions to be unpersuasive. (Tr. 24). In reaching that conclusion, the ALJ stated that Dr. Lee "did not address the issue of onset." (*Id.*). The ALJ further stated that Dr. Lee's notes indicated that Plaintiff was working as a painter as late as October 2019 "although her earnings records did not clearly indicate any work after the alleged onset date of disability." (*Id.*). Ultimately, the ALJ found Dr. Lee's opinions unpersuasive as to the issue of whether the claimant was disabled on or before the date last insured (December 31, 2019). (*Id.*).

Having reviewed the record, the Court believes the ALJ failed to sufficiently consider Dr. Lee's opinions. First, the ALJ failed to sufficiently discuss the supportability/relevancy and consistency of Dr. Lee's opinion as required by 20 C.F.R. §§ 404.1520c(c), 404.1520c(b)(2). *See* (Tr. 24). Because Dr. Lee stated that his June 2022 opinion outlining numerous work-related limitations applied to Plaintiff on June 28, 2019,

his opinion is relevant to whether Plaintiff was disabled during the relevant period.  The same is true for Dr. Lee's July 2023 opinion, which specifically addressed Plaintiff's limitations as of June 2019 and included work-related functional limitations such as "unable to walk without assistance."  (Tr. 379).  The ALJ's opinion failed to sufficiently discuss the functional limitations referenced by Dr. Lee.  And the ALJ failed to sufficiently assess the supportability and consistency of Dr. Lee's opinions.

For example, the ALJ did not discuss Dr. Lee's own examination findings and how those findings did or did not cohere with his opinion. *See* 20 C.F.R. § 404.1520c(c)(1) (noting that supportability requires an assessment of the evidence "presented by" the opinion source).  Nor did the ALJ discuss whether Dr. Lee's opinions are consistent with other medical sources and nonmedical sources.  *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that the consistency factor requires an assessment of whether the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim").  This warrants remand.  *See* 20 C.F.R. § 404.1520c(b)(2) (requiring an explanation of "how [the ALJ] considered the supportability and consistency factors for

a medical source's medical opinions . . . in [the ALJ's] determination or decision"); *see also Bonnett v. Kijakazi*, 859 F. App'x 19 (8th Cir. 2021) (remanding when the ALJ failed to discuss both the supportability and consistency of a doctor's opinion); *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where the ALJ discredited physician's opinion without discussing factors contemplated in the regulations because failure to do so was legal error); *Curlee v. Kijakazi*, No. 8:22cv1697, 2023 WL 6307183, at **4-5 (M.D. Fla. Sept. 28, 2023) (reversing and remanding where the ALJ failed to adequately evaluate both the supportability and consistency of the doctor's opinion and collecting similar cases).

Second, the reasons the ALJ provided for discrediting Dr. Lee's opinions are not supported by substantial evidence in the record. The ALJ discredited Dr. Lee's opinions because he "did not address the issue of onset."[3] (Tr. 24). But that is not an accurate description of the evidence

---

[3] Determining a claimant's onset date is an administrative decision reserved for the Commissioner to decide, not a doctor. SSR 83-20, 1983 WL 31249 (SSA) (recognizing "the decisionmaker" must establish the onset date and describing the evidence to be considered when establishing claimant's onset date); *see also Grebenick v. Chater*, 121 F.3d 1193, 1200 (8th Cir. 1997) (detailing what evidence the ALJ should consider when determining a claimant's onset date). Thus, it is the ALJ's

in the record.  In his July 2023 opinion, Dr. Lee explicitly stated that the work-related limitations that he included in his June 2022 opinion fully applied to Plaintiff's condition as of June 28, 2019.  (Tr. 380).  And when asked about Plaintiff's condition on June 28, 2019, Dr. Lee stated that Plaintiff was "Incapacitated.  Unable to walk without assistance."  (Tr. 379).  If true, this would preclude Plaintiff from light work.  *See* 20 C.F.R. § 404.1567(b) (explaining that light work "requires a good deal of walking").  The ALJ's opinion failed to sufficiently discuss Dr. Lee's statements regarding Plaintiff's condition in June 2019.

Additionally, the ALJ discredited Dr. Lee's opinions because "records as late as October 2019 reflected that the claimant was working as a painter."  (Tr. 24).  But that is not an entirely accurate description of the information in the record.  On September 6, 2019, Dr. Lee's treatment notes state "Not working much now[.]"  (Tr. 343).  And on October 8, 2019, during Plaintiff's annual exam, Dr. Lee wrote, "Chronic hip and back pain, lower knee pain, she is a painter."  (Tr. 341).  At that

---

duty to consider plaintiff's allegations, work history, and medical and other evidence of plaintiff's condition to determine onset. *Grebenick,* 121 F.3d at 1200.  It is not Dr. Lee's responsibility to identify a specific onset date.

same appointment, Dr. Lee renewed her Norco prescription and other medications due to her ongoing issues with chronic back pain. (*Id.*). Dr. Lee's treatment notes do not clearly indicate that Plaintiff was performing work as a painter in October 2019. Instead, the record seems to indicate that Plaintiff was a painter but that she was no longer able to engage in that activity because of her medical condition. Indeed, the ALJ recognized that the record does not reflect any work after Plaintiff's alleged onset date in June 2019. (Tr. 24). Thus, substantial evidence does not support the ALJ's statement that Dr. Lee's records showed Plaintiff was working as a painter as late as October 2019.

Additionally, the ALJ failed to sufficiently discuss Dr. Lee's interpretation of Plaintiff's 2021 MRI results. Instead, it appears that the ALJ relied on her own assessment of the MRI results. More specifically, the ALJ acknowledged "reference to a few severe findings" but ultimately the ALJ concluded the MRI showed no findings "definitively indicative of an impairment." (Tr. 25); *see also* (Doc. 12 at 7-9, 13-14). Dr. Lee, on the other hand, reviewed the MRI results and wrote the following in his treatment notes regarding the results of the MRI: "Would she be a surgical candidate, probably so. Can she afford it,

13

no. Can she afford epidural blocks, no. Would they work, it is questionable." (Tr. 315). There appears to be a discrepancy between the ALJ's interpretation of the MRI results and Dr. Lee's interpretation of the MRI results. And the ALJ failed to sufficiently discuss the discrepancy. *See Graham v. Comm'r of Soc. Sec.*, No. 2:22cv161, 2024 WL 1009538, at *3 (S.D. Miss. Jan. 23, 2024), *adopted by* 2024 WL 472513 ("The ALJ erred by formulating Plaintiff's RFC based on the ALJ's own lay interpretation of a September 2021 MRI of Plaintiff's lumbar spine without a medical expert's input.").

At the end of the day, the ALJ's opinion failed to sufficiently discuss the opinions rendered by Dr. Lee. This matter, therefore, should be remanded to the Commissioner for further consideration of Dr. Lee's opinions.

## VI.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1) The Commissioner's decision be **REVERSED** and this matter be **REMANDED** for further proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g).

2) The Clerk of Court be directed to close the case file.

At Pensacola, Florida, this 17th day of June 2026.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

15